## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### NORTHERN DIVISION

**MICHAEL VALENTINE GARDNER**                                                              **PLAINTIFF**
**ADC #175884**

**v.**                              **Case No. 3:21-cv-00033-KGB**

**JOE PAGE, III,** *et al.*                                                              **DEFENDANTS**

## <u>ORDER</u>

Plaintiff Michael Valentine Gardner is currently an inmate at the Grimes Unit of the Arkansas Division of Correction ("ADC").  Mr. Gardner, proceeding *pro se*, filed a motion for leave to proceed *in forma pauperis* and a complaint pursuant to 42 U.S.C. § 1983, naming as defendants in their personal and official capacities Grimes Unit Warden Joe Page, III, Deputy Warden Kenny Davis, and ADC Director Dexter Payne (Dkt. Nos. 1, 2).  Mr. Gardner also filed an amended complaint, which is titled petition for writ of habeas corpus (Dkt. No. 3).[1]  Mr. Gardner alleges that he is wrongfully being denied parole (Dkt. Nos. 2, 3).  Pending before the Court is Mr. Gardner's motion for leave to proceed *in forma pauperis* (Dkt. No. 1).  Mr. Gardner's motion for leave to proceed *in forma pauperis* will be granted.  For the reasons set forth herein, Mr. Gardner's 42 U.S.C. § 1983 claims will be dismissed without prejudice for failure to state a claim on which relief may be granted.  At this stage, Mr. Gardner's petition for writ of habeas corpus is referred to United States Magistrate Judge Harris, who is assigned to this matter, for review consistent with the handling of such claims.

---

[1]  For the purposes of this Order, the Court will refer to the document as an amended complaint.

## I.    *In Forma Pauperis* Application

Under the Prison Litigation Reform Act ("PLRA"), with respect to Mr. Gardner's initial

42 U.S.C. § 1983 claims, a prisoner who is permitted to file a civil action *in forma pauperis* still

must pay the full statutory filing fee of $350.00.  28 U.S.C. § 1915(b)(1).  The only question is

whether a prisoner will pay the entire filing fee at the initiation of the proceeding or in installments

over a period of time.  *Ashley v. Dilworth*, 147 F.3d 715, 716 (8th Cir. 1998).  Even if a prisoner

is without assets and unable to pay an initial filing fee, he will be allowed to proceed with his §

1983 claims, and the filing fee will be collected by the Court in installments from the prisoner's

inmate trust account.  28 U.S.C. § 1915(b)(4).  As explained in this Order, based on screening, the

Court dismisses without prejudice Mr. Gardner's 42 U.S.C. § 1983 claims.[2]

Given the circumstances of this case, the Court turns to Mr. Gardner's habeas claims.  With

respect to habeas claims, Mr. Gardner must either pay the $5.00 filing fee required by 28 U.S.C. §

1914(a) to initiate a petition for habeas corpus or submit documents requesting permission to

proceed *in forma pauperis*.  *See* Rule 3(a), Rules Governing § 2254 Cases in United States District

Courts (providing that a habeas petition "must be accompanied" by the applicable filing fee or a

---

[2]    The Court recognizes that, if the prisoner's 42 U.S.C. § 1983 case is subsequently
dismissed for any reason, including a determination that it is frivolous, malicious, fails to state a
claim, or seeks monetary relief against a defendant who is immune from such relief, under most
circumstances the full amount of the $350.00 filing fee will be collected, and no portion of this
filing fee will be refunded to the prisoner.  *See* 28 U.S.C. § 1915(b)(1) ("Notwithstanding
subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner
shall be required to pay the full amount of a filing fee."); *see also Jackson v. N.P. Dodge Realty
Co.*, 173 F. Supp. 2d 951, 952 (D. Neb. 2001) ("The Prison Litigation Reform Act (PLRA) makes
prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an
appeal.  Thus, when an application to proceed in forma pauperis (IFP) is filed in such a case, 'the
only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a
period of time under an installment plan.'") (citations omitted) (quoting *Henderson v. Norris*, 129
F.3d 481, 483 (8th Cir.1997)).  Given the circumstances of this case, the Court will assess the filing
fee for initiating a petition for writ of habeas corpus, as opposed to the fee to initiate 42 U.S.C. §
1983 claims.

"motion for leave to proceed *in forma pauperis*, the affidavit required by 28 U.S.C. § 1915, and a certificate from the warden or other appropriate officer of the place of confinement showing the amount of money or securities that the petitioner has in any account in the institution"). Mr. Gardner has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a) (Dkt. No. 1).  Accordingly, the Court grants Mr. Gardner's motion to proceed *in forma pauperis*. Mr. Gardner may proceed without paying the $5.00 filing fee.

## II.    Background

In his initial complaint, Mr. Gardner sues Warden Page, Deputy Davis, and Director Payne under 42 U.S.C. § 1983 (Dkt. No. 2).  Mr. Gardner alleges that the "ADC is arbitrarily using its discretion . . . to invoke the 'Habitual Offenders Act'" and not consider him for parole (*Id*., at 4). According to Mr. Gardner, he is not a habitual offender because he committed only one felony within the State of Arkansas (*Id*.).  Mr. Gardner believes that, because he is not a habitual offender, he is unlawfully being compelled to serve his full sentence (*Id*.).  He alleges "[i]llegal incarceration without parole" (*Id*.).  As relief, Mr. Gardner asks only that the Court "expunge all Habitual Offenders Acts and grant parole forthwith" (*Id*., at 5).

Mr. Gardner's amended complaint sheds light on his claims (Dkt. 3).  Mr. Gardner included a grievance in which he complained to ADC officials contesting his parole eligibility, specifically his being labeled an habitual offender (*Id*., at 19).  An ADC official responded that Mr. Gardner was not sentenced as an habitual offender but that Arkansas Code Annotated § 16-93-609 applied to Mr. Gardner's sentence (*Id*.).  That statue reads:

> (a) Any person who commits murder in the first degree, § 5-10-102, rape, § 5-14-103, or aggravated robbery, § 5-12-103, subsequent to March 24, 1983, and who has previously been found guilty of or pleaded guilty or nolo contendere to murder in the first degree, § 5-10-102, rape, § 5-14-103, or aggravated robbery, § 5-12-103, shall not be eligible for release on parole by the Parole Board.

> (b)　(1) Any person who commits a violent felony offense or any felony sex offense subsequent to August 13, 2001, and who has previously been found guilty of or pleaded guilty or nolo contendere to any violent felony offense or any felony sex offense shall not be eligible for release on parole by the board.
> (2) As used in this subsection, "a violent felony offense or any felony sex offense" means those offenses listed in §  5-4-501(d)(2).

Ark. Code Ann. § 16-93-609.

A violent felony includes, among other offenses:  aggravated assault on a law enforcement officer or an employee of a correctional facility under Arkansas Code Annotated § 5-13-211, if a Class Y felony; residential burglary under Arkansas Code Annotated § 5-39-201(a); or a conviction of a comparable felony involving violence from another jurisdiction.  Ark. Code Ann. § 5-4-501(d)(2)(A)(xi), (xvi); § 5-4-501(d)(2)(B).  Aggravated assault on a law enforcement officer or an employee of a correctional facility is a Class D felony under Arkansas Code Annotated § 5-13-211(a)(1), and a Class Y felony under Arkansas Code Annotated § 5-13-211(a)(2). Ark. Code Ann. § 5-13-211(b).

Mr. Gardner contests the application of Arkansas Code Annotated § 5-13-211 to his sentence (Dkt. Nos. 2, 3.)

The Court notes that Mr. Gardner was convicted of aggravated assault on a law enforcement officer in violation of Arkansas Code Annotated § 5-13-211(a)&(b) in Miller County, Arkansas, on May 10, 2016.  *See* Arkansas Judiciary Website, Docket Search, http://caseinfo.arcourts.gov; *State v. Gardner*, 46CR-15-545.[3]  In the sentencing order in that case, the offense was identified as a Class D felony.  Mr. Gardner was sentenced to three years of

---

[3] The Court can take judicial notice of the proceedings in Mr. Gardner's state cases because they are directly related to the issues here.  *Conforti v. United States*, 74 F.3d 838, 840 (8th Cir. 1996).

probation in that case, with no jail time. *Id.*   Then, on October 1, 2017, Mr. Gardner pled guilty to residential burglary under Arkansas Code Annotated § 5-39-201(a), a Class B felony, again in Miller County; he was sentenced to jail time and probation.  *See* Arkansas Judiciary Website, Docket Search, http://caseinfo.arcourts.gov; *State v. Gardner*, 46CR-16-514-3.

While the Court does not have full information about Mr. Gardner's criminal history, in a criminal responsibility report created following a forensic evaluation ordered by the Miller County Court on August 31, 2016, Mr. Gardner apparently stated that he had 63 prior offenses in California. *Id.*  Mr. Gardner stresses that the determination of whether a felony conviction from another jurisdiction is comparable to a felony enumerated in Arkansas Code Annotated § 5-4-501(d)(2) is within the discretion of the trial judge at the time of sentencing (Dkt. No. 3, at 46).  It is possible, but unclear, if Mr. Gardner contests a conviction or convictions from other jurisdictions being considered in his eligibility of parole under Arkansas Code Annotated § 16-93-609.

Mr. Gardner currently is serving a five-year sentence after pleading guilty on April 21, 2020, to a probation violation in *State v. Gardner*, 46CR-16-514-3 (Dkt. No. 2, at 3, providing: "[s]entenced to five (5) years for probation revocation. Class B felony.").  At the time Mr. Gardner pled guilty, he also signed a document in which he acknowledged that his parole eligibility was not guaranteed.  *See* Arkansas Judiciary Website, Docket Search, http://caseinfo.arcourts.gov; *State v. Gardner*, 46CR-16-514-3.  That document reads, in relevant part:

> I do hereby state that I have consulted with my attorney regarding entry of a plea in this case(s).  I have consulted with my attorney regarding the possibility of parole in this case(s).  However, I also understand that I should not rely upon any information he/she has provided to me as to my eligibility and I understand that no attorney, prosecuting attorney nor Judge has any control over the actions of the Arkansas Department of Corrections and that any parole time will be calculated by the parole board and cannot be calculated with any reasonable degree of certainty at this time.  I advise the Court that I have not relied upon any conversation, advice or suggestion regarding any statute relating to parole from my attorney as to when I would be released on parole in entering this plea agreement.  I also advise the

Court that any such conversation was not the basis for my plea nor would I have insisted on a trial even if the discussion was in error as to my eligibility.

*Id*.

### III.    Screening

The PLRA requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that:  (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).  The *in forma pauperis* statute also imposes these standards for dismissal.  28 U.S.C. § 1915(e)(2)(B).

An action is frivolous if "it lacks an arguable basis either in law or in fact."  *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

In reviewing the sufficiency of a *pro se* complaint under the Court's screening function, the Court must give the complaint the benefit of a liberal construction.  *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).  The Court also must weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless.  *Denton v. Hernandez,* 504 U.S. 25, 32 (1992).  Although *pro se* complaints are to be liberally construed, the complaint must allege specific facts sufficient to state a claim.  *See Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir. 1985).

### IV.    Discussion

Mr. Gardner alleges "[i]llegal incarceration without parole" and asks the Court to grant him parole "forthwith" (Dkt. No. 2, at 4-5).  He contests the application of Arkansas Code Annotated § 16-93-609 to his sentence, claiming he has committed only one felony within the

State of Arkansas.  As explained below, Mr. Gardner's allegations fail to state a claim on which relief may be granted under 42 U.S.C. § 1983, and the relief he seeks in his complaint is unavailable under 42 U.S.C. § 1983.

The Court interprets Mr. Gardner's allegations as a due process claim.  Mr. Gardner, however, does not have a protected liberty interest in the possibility of parole, and, accordingly, no violation of his due process rights is implicated.  *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *Parker v. Corrothers*, 750 F.2d 653, 655-57 (8th Cir. 1984). A protected liberty interest "may arise from two sources — the Due Process Clause itself and the laws of the States."  *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal citation omitted).  There is "'no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.'"  *Jackson v. Nixon*, 747 F.3d 537, 551 (8th Cir. 2014) (quoting *Greenholtz*, 442 U.S. at 7).  State law may create a liberty interest if "'state statute or regulation involved uses mandatory language and imposes substantive limits on the discretion of state officials.'"  *Snodgrass v. Robinson*, 512 F.3d 999, 1003 (8th Cir. 2008) (internal citation omitted).

When a prisoner is committed to the Arkansas Department of Correction, "he can be assured of only one thing — that he will be released from the State's custody at the end of the term of years specified by the sentencing court."  *Richmond v. Duke*, 909 F. Supp. 626, 631 (E.D. Ark. 1995).  Under Arkansas law, the Parole Board *may* release an individual on parole, but there is no right to release.  Arkansas parole statutes create only the possibility of parole, not "a protectable liberty interest in discretionary parole decisions . . . ."  *Hamilton v. Brownlee*, 237 Fed. Appx. 114, 115 (8th Cir 2007); *see also Persechini v. Callaway*, 651 F.3d 802, 807-08 (8th Cir. 2011) (no liberty interest in discretionary parole decisions).  Because Mr. Gardner has no protected liberty

interest in the possibility of parole, his allegations fail to state a 42 U.S.C. § 1983 claim on which relief may be granted.  This holds true for Mr. Gardner's personal and official capacity claims against defendants.

Further, if a judgment in favor of a prisoner in a 42 U.S.C. § 1983 action would necessarily imply the invalidity of the state conviction, continued imprisonment, or sentence, then no claim lies unless the conviction or sentence is reversed, expunged, or called into question by the issuance of a federal writ of *habeas corpus*.  *Heck v. Humphrey*, 512 U.S. 477, 486-78 (1994).  *See also Sheldon v. Hundley*, 83 F.3d 231, 233 (8th Cir. 1996) (under *Heck*, courts look to the essence of plaintiff's claims and not merely the form of relief sought).  A claim based on the invalidity of the state conviction, continued imprisonment, or sentence "that has not been so invalidated is not cognizable under § 1983."  *Heck,* 512 U.S. at 487.  The holding of *Heck* has been applied to claims that would imply the invalidity of a parole revocation.  *See Newmy v. Johnson*, 758 F.3d 1008 (8th Cir. 2014).  Mr. Gardner challenges his sentence despite having acknowledged at the time of his plea that any parole time could not be calculated with any reasonable degree of certainty

Beyond that, the relief Mr. Gardner seeks in his complaint is not available to him under 42 U.S.C. § 1983.  "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or speedier release from imprisonment, his sole federal remedy is a writ of habeas corpus."  *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

Mr. Gardner's amended complaint is titled "Petition for Writ of Habeas Corpus" (Dkt. No. 3).  At this stage of the litigation, Mr. Gardner's petition for writ of habeas corpus is referred to United States Magistrate Judge Harris, who is assigned to this matter, for review consistent with the handling of such claims.

### V.      Conclusion

It is therefore ordered that:

1.      Mr. Gardner's motion for leave to proceed *in forma pauperis* is granted (Dkt. No. 1).

2.      The Clerk of the Court is directed to send a copy of this order to: the Warden of the Grimes Unit of the Arkansas Department of Correction, 300 Corrections Circle, Newport, Arkansas 72112; the ADC Trust Fund Centralized Banking Office, P.O. Box 8908, Pine Bluff, Arkansas 71611; and the ADC Compliance Office, P.O. Box 20550, Pine Bluff, Arkansas 71612.

3.      Mr. Gardner's 42 U.S.C. § 1983 claims are dismissed without prejudice for failure to state a claim upon which relief may be granted.

4.      At this stage, Mr. Gardner's petition for writ of habeas corpus is referred to United States Magistrate Judge Harris, who is assigned to this matter, for review consistent with the handling of such claims (Dkt. No. 3).

5.      The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Order would not be taken in good faith.

It is so ordered this 10th day of May, 2021.

Kristine G. Baker
United States District Judge